## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Pamela M.,[1]

Plaintiff,

v.                                                          3:25-cv-965 (MJK)

Commissioner of Social Security,

Defendant.

---

Jennifer L. Dunn, Esq., for Pamela M.
Vernon Norwood, Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Pamela M. brought this action under the Social Security Act (42 U.S.C. § 405(g)), seeking judicial review of the Social Security Commissioner's final decision denying her application for benefits. (Dkt. 1). Pamela M. moved to proceed *in forma pauperis* ("*IFP*") (Dkt. 3) which the Court granted on July 23. 2025 (Dkt. 8). Pamela M. also consented to Magistrate Judge jurisdiction. (Dkt. 6); *see also* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, General Order 18. Both parties filed briefs (Dkts. 15, 19, 20) which, in accordance with General Order 18, the

---

[1] This Memorandum-Decision and Order will identify Plaintiff using only her first name and last initial to protect her privacy.

1

Court treats as motions under Fed. R. Civ. P. 12(c).

## I.    PROCEDURAL HISTORY

On January 7, 2022, Pamela M. applied for Supplemental Security Income under Title XVI, alleging disability beginning January 5, 2017. (T. 392-399). Her application was initially denied on September 13, 2022, and again after reconsideration on July 13, 2023. (T. 197-200, 204-206).

On August 18, 2023, Pamela M. requested a hearing before an administrative law judge ("ALJ"). (T. 207). On February 1, 2024, a hearing was held before ALJ Greisler. (T. 155-177). ALJ Greisler issued an unfavorable decision on February 20, 2024, denying Pamela M.'s disability claim. Pamela M. then requested a review of ALJ Greisler's unfavorable decision by the Appeals Council, and on May 10, 2024, her claim was remanded for another hearing to "consider her maximum residual functional capacity during the entire period at issue and provide rationale with specific reference to evidence of record" and "to further evaluate the medical source opinions and prior administrative medical findings pursuant to 20 CFR 416c." (T. 184-190).

On January 8, 2025, ALJ Greisler held a telephonic hearing where

Pamela M. and vocational expert Robert Baker testified. (T. 82-110). On February 28, 2025, ALJ Greisler issued a decision denying Pamela M. benefits. (T. 27). This became the Agency's final decision after the Appeals Council denied Pamela M.'s request for review. (T. 1-3).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a claimant seeking Supplemental Security Income must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such severity that they are not only unable to do their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which they live, or whether a specific job vacancy exists for them, or whether they would be hired if they applied for work.

42 U.S.C. § 1382c(a)(3)(B) (cleaned up).

3

The Commissioner uses a five-step process, set forth in 20 C.F.R. section 404.1520 to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The claimant has the burden of establishing disability at the first four steps. *Id*. If the claimant establishes that their impairment prevents them from performing their past work, then the burden shifts to the Commissioner to prove the fifth and final step. *Id*.

## B.    Scope of Review

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and

4

whether substantial evidence supported the decision. *Id.*; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447-48 (2d Cir. 2012) (*per curiam*); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Id.* (citation omitted). Yet this standard is a very deferential standard of review "—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004) (quoting *Wiggins v. Barnhart*, 2002 WL 1941467, at *7 (S.D.N.Y. Aug. 21, 2002)); *see also Fuller v. Astrue*, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

The record includes Pamela M.'s medical history, which the parties are familiar with. The Court will refer to the pertinent records and Pamela M.'s hearing testimony in its analysis as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the five-step sequential evaluation, ALJ Greisler determined that Pamela M. had not engaged in substantial gainful activity since January 7, 2022. (T. 13)

At step two, ALJ Greisler found that Pamela M. had the following severe impairments: inflammatory arthritis; anxiety disorder; post-

traumatic stress disorder; attention deficit hyperactivity disorder; fibromyalgia; substance use disorder; a spine disorder; and a knee disorder (mild degenerative changes). (T. 13). For non-severe impairments, ALJ Greisler also found that Pamela M. had carpal tunnel syndrome. (*Id.*).

At step three, ALJ Greisler determined that Pamela M.'s impairments neither met nor medically equaled the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 14).

Next, ALJ Greisler discussed the "paragraph B" criteria. (T. 14-15). "To satisfy the paragraph B criteria," mental impairments "must result in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See Id.* ALJ Greisler found that Pamela M. had moderate limitations across all four broad areas of mental functioning. (T. 14-15). ALJ Greisler

7

concluded that Pamela M.'s impairments did not meet the "paragraph B" criteria because they did not cause two "marked" limitations or one "extreme" limitation. (T. 15).

ALJ Greisler also considered the "paragraph C" criteria. (*Id.*). The "paragraph C" criteria require a documented medical history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(A)(2)(c), 12.00(G)(2)(b)-(c). ALJ Greisler found the "paragraph C" criteria not met. (T. 15).

Moving on, ALJ Greisler determined that Pamela M. had the residual functional capacity ("RFC") to perform:

> light work . . . except she can occasionally stoop, balance, crouch, crawl, kneel, and climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds or work at unprotected heights. [Pamela M.] cannot tolerate concentrated exposure to repiratory [sic] irritants or extreme heat. She can perform simple tasks at a consistet [sic], goal-oriented pace, but not at

a fast production rate pace such as would be experienced in assembly line type of work. [Pamela M.] can engage in occasional interaction with supervisors and coworkers but not the public. She can make simple decisions directly related to his or her work and tolerate occasional work changes.

(T. 15).

When crafting the RFC, ALJ Greisler stated that she considered all of Pamela M.'s symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id*.). ALJ Greisler added that she fully considered "the medical opinion(s) and prior administrative medical finding(s)" as required by 20 C.F.R. § 416.920c. (T. 16).

At step four, ALJ Greisler determined that Pamela M. had no past relevant work; was closely approaching advanced age—*i.e.*, an individual that is 50-54 years old; has at least a high school education; and that transferability of jobs skills was "not material." (T. 25-26).

At step five, ALJ Greisler found that "there are jobs that exist in significant numbers in the national economy that [Pamela M.] can perform." (T. 26). To end, ALJ Greisler determined that Pamela M. was not disabled. (T. 27).

## V.   ISSUES IN CONTENTION

Pamela M. argues that ALJ Greisler improperly performed the supportability and consistency analyses across almost all medical opinions that she evaluated. (Pl.'s Br., at pgs. 11-20).[2] The Commissioner replies that substantial evidence supported ALJ Greisler's determinations.[3]

## VI.   DISCUSSION

For the reasons more fully discussed below, the Court reverses and remands ALJ Greisler's decision to deny Pamela M. benefits because ALJ Greisler did not properly evaluate the supportability and consistency of Dr. Aponte's Mental Capacity Assessment (T. 692-694) or Dr. Dommaraju's Mental Impairment Questionnaire (T. 859-862). Because the Court concludes that ALJ Greisler's evaluation traversed the regulations, it need not reach her analysis of the remaining medical opinions discussed in her decision.

---

[2] Pamela M.'s brief will be referred to as ("Pl.'s Br.").

[3] Defendant's Brief will be cited as ("Def.'s Br.").

When evaluating medical evidence, ALJs must consider all medical opinions and "evaluate their persuasiveness" under a five-factor framework. The five factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors to consider), (4) specialization, and (5) other factors. 20 C.F.R. §§ 416.920c(a)-(c). "The two most important factors for determining the persuasiveness of medical opinions are supportability and consistency[.]" *Philip B. v. Comm'r of Soc. Sec.*, No. 23-CV-01455 (BKS/DJS), 2025 WL 540372, at *2 (N.D.N.Y. Feb. 19, 2025) (internal quotation marks and citation omitted).

Supportability is an internal check: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

Consistency is an external check: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the

11

claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). ALJs must explicitly state how they considered both factors. 20 C.F.R. § 416.920c(b)(2).

An ALJ's failure to explain the supportability and consistency of the medical opinions is procedural error. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019). Procedural errors are subject to harmless error review. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order) (applying harmless error review to a procedural error).

### A. ALJ Greisler did not properly analyze Drs. Aponte and Dommaraju's opinions of Pamela M.'s mental health which warrants reversal and remand.

ALJ Greisler's failure to apply the consistency factor to the mental health opinions of Drs. Aponte and Dommaraju warrants reversal and remand. ALJ's Greisler's failure to apply the supportability factor to Dr. Aponte's opinion of Pamela M.'s mental health also warrants reversal and remand.

### 1. Dr. Aponte

ALJ Greisler found Dr. Aponte's March 7, 2022, Mental Capacity Assessment not persuasive. (T. 21, 692-694).[4] ALJ Greisler stated that Dr. Aponte's "opinion is more severe than the clinical findings and intensity and course of treatment would support." (*Id.*). Despite her commentary, ALJ Greisler provided no further analysis, provided only one citation to Dr. Aponte's opinion, and did not compare Dr. Aponte's opinion to the other opinions of record. (*Id.*). After finding Dr. Aponte's opinion unpersuasive, ALJ Greisler noted that Pamela M. "does not even attend therapy," and "has never been hospitalized or sought emergency care related to her mental health." (*Id.*). This was the totality of ALJ Greisler's analysis of Dr. Aponte's Mental Capacity Assessment.

Absent from ALJ Greisler's decision is any meaningful supportability and consistency evaluation of Dr. Aponte's opinion. To satisfy the supportability factor, ALJs must consider whether the medical source supported their opinion with "objective medical evidence

---

[4] The Court notes that Dr. Aponte also completed a Physical Assessment on March 7, 2022. (T. 695-696). The Court's Memorandum-Decision and Order is limited to Dr. Aponte's March 7, 2022 Mental Capacity Assessment.

and supporting explanations[.]" 20 C.F.R. § 404.1520c(c)(1). To satisfy the consistency factor, ALJs "must look outside the medical opinion itself to evidence from other medical sources and nonmedical sources in the claim and . . . find the medical opinion more persuasive the more consistent it is with these external sources." *Kathleen A. v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1034 (LEK), 2022 WL 673824, at *5 (N.D.N.Y. Mar. 7, 2022) (internal quotation marks and citation omitted). ALJ Greisler did neither, despite a clear directive from the Appeals Council. *See Nancy S. v. Kijakazi*, 2023 WL 2628973, at *4 (D. Conn. Mar. 24, 2023) (finding error where the ALJ made "no attempt to adequately analyze the medical evidence and supporting explanation[,]" and similarly failed to analyze consistency). ALJ Greisler offered only conclusory statements that give the Court no insight as to what she found unsupported and inconsistent within Dr. Aponte's Mental Capacity Assessment. *See, e.g.*, *Loucks*, 2022 WL 2189293, at *2 (finding single sentence statements that an opinion was supported, and that a separate opinion was inconsistent, do not satisfy the regulations). And ALJ Greisler's conclusory statements offer no insight into how well Dr. Aponte supported and explained her opinion. *See, e.g.*, *Ayala v.*

14

*Kijakazi*, 620 F. Supp. 3d 6, 31-32 (S.D.N.Y 2022) (explaining that conclusory assertions are insufficient to withstand review). To the extent that ALJ Greissler discounts Pamela M.'s limitations because she "does not even attend therapy," "[f]aulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Sweet v. Astrue*, 32 F. Supp. 3d 303, 314 (N.D.N.Y. 2012) (internal quotation marks and citation omitted). Because ALJ Greisler failed to follow the regulations, the Court reverses and remands her decision.

### 2. Dr. Dommaraju

Like her treatment of Dr. Aponte's Mental Capacity Assessment, ALJ Greisler's discussion of Dr. Dommaraju's Mental Impairment Questionnaire (T. 859-862) does not include a consistency analysis. (T. 24).[5] While ALJ Greisler traversed the regulations by failing to discuss the consistency of Dr. Dommaraju's Mental Capacity Assessment, she included a minimal supportability analysis by referencing several treatment notes. (T. 726, 866, 871). Also, ALJ Greisler's analysis of Dr.

---

[5] The Court notes that Dr. Dammaraju also completed a Physical Assessment dated December 21, 2023 (T. 856-858) and a Physical Impairment Questionnaire dated January 2, 2025 (T. 926-928).

15

Dommaraju's Mental Impairment Questionnaire is silent as to its persuasiveness. (T. 24). ALJ Greisler stated that "mental health records do not indicate such severe finding to support a marked, no less [an] extreme limitation." (*Id.*). ALJ Greisler further noted that Dr. Dommaraju's opinion seemed to be based on "statements made by [Pamela M.] as opposed to an actual examination of [her,] as these limitations are almost identical to [Pamela M.'s] own statements during a December 2023 appointment." (*Id.*).

Nothing in the record permits the Court to understand why the explanations provided by Drs. Aponte and Dommaraju in support of their opinions were discounted by ALJ Greisler. *See, e.g.*, *Glenn G. v. Kijakazi*, 2023 WL 2477501, at *7 (D. Conn. Mar. 13, 2023) ("[I]t is a familiar extension of a longstanding principle in Social Security jurisprudence which guides that remand is not necessarily warranted for legal errors if 'the record evidence permits a court to glean the rationale of the ALJ's decision.'") (quoting *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order)) (cleaned up)). And because Drs. Aponte and Dommaraju found mental limitations that suggested marked and extreme impairments, the Court concludes that ALJ

Greisler's errors were not harmless. *See, e.g.*, *Melissa C. o/b/o M.C. v. Kijakazi*, 2022 WL 167534, at \*3 (W.D.N.Y. Jan. 18, 2022) (remanding, finding that the ALJ's error could not "be said to be harmless," where "reassessment of [the claimant's] limitations in these areas could potentially result in a finding of marked limitations in two of those functional domains, or an extreme limitation in one"). Because ALJ Greisler did not properly follow the regulations, and her errors were not harmless, the Court reverses and remands her decision.

### B. The Court need not address ALJ Greisler's evaluation of the remaining medical opinions discussed in her decision.

In addition to her discussion of Dr. Aponte's Mental Capacity Assessment (T. 692-694) and Dr. Dommaraju's Mental Impairment Questionnaire (T. 859-862), ALJ Geisler's decision also analyzes the opinions of: (1) state agency medical consultants Drs. Perotti, Rosenthal, Walker and Linden; (2) consultative examiners Slowik and Magunro; (3) Killian Kelly, FNP (T. 20-25); (4) Dr. Aponte (March 7, 2022, Physical Assessment) (T. 695-696); (5) Dr. Dammaraju (December 21, 2023, Physical Assessment) (T. 856-858) (January 2, 2025, Physical Impairment Questionnaire) (T. 926-928). Because the Court is reversing

and remanding ALJ Geisler's decision for the reasons articulated above, it need not decide whether she evaluated the opinions of the other medical opinions listed above in a manner consistent with the regulations. On remand, ALJ Geisler is reminded of the Appeals Council's prior directive that she "evaluate the medical source opinions and prior administrative medical findings pursuant to the provisions of 20 CFR 416.920c." (T. 187).

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that:

1. Pamela M.'s motion for judgment on the pleadings (Dkts. 15, 20) is **GRANTED**;

2. the Commissioner's motion for judgment on the pleadings (Dkt. 19) is **DENIED**; and

3. The Commissioner be **REVERSED**, and this action be

   **REMANDED** to the Commissioner pursuant to sentence four of 42

   U.S.C. § 405(g) for further proceedings consistent with this

   Memorandum-Decision and Order.

Dated: July 27, 2026.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge